UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| RICHARD LAWRENCE,<br><br>        Plaintiff,<br><br>v.<br><br>WELBILT, INC., CYNTHIA M. EGNOTOVICH, DINO J. BIANCO, JOAN K. CHOW, JANICE L. FIELDS, BRIAN R. GAMACHE, ANDREW LANGHAM, and WILLIAM C. JOHNSON,<br><br>        Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Richard Lawrence ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE AND SUMMARY OF THE ACTION**

1. This is an action brought by Plaintiff against Welbilt, Inc. ("Welbilt" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17

C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Welbilt will be acquired by Ali Holding S.r.l. ("Parent"), Ali Group North America Corporation ("Acquiror"), and Ascend Merger Corp. ("Merger Sub," and together with Parent and Acquiror, "Ali") (the "Proposed Transaction").

2. On July 14, 2021, Welbilt and Ali issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated July 14, 2021 (the "Merger Agreement"). Under the terms of the Merger Agreement, Welbilt stockholders will receive $24.00 in cash for each share of Welbilt common stock they own (the "Merger Consideration").

3. On August 31, 2021, Welbilt filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Welbilt stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Morgan Stanley & Co. LLC ("Morgan Stanley"); and (iii) the background of the Proposed Transaction. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, Welbilt's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and

omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Welbilt maintains and operates manufacturing and office facilities in this District. Moreover, each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

# THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Welbilt.

9. Defendant Welbilt is a Delaware corporation with its principal executive offices located at 2227 Welbilt Boulevard, New Port Richey, Florida 34655. Welbilt is one of the world's leading commercial foodservice equipment companies. It became publicly traded in March 2016 after a spin-off (the "Spin-Off") from The Manitowoc Company, Inc. ("MTW"). Welbilt maintains and operates manufacturing and office facilities in this District, located in Mt. Pleasant, Michigan. Welbilt's common stock trades on the New York Stock Exchange under the ticker symbol "WBT."

10. Defendant Cynthia M. Egnotovich ("Egnotovich") has been Chair of the Board since the Spin-Off and also served as a director of MTW from 2008 until the Spin-Off.

11. Defendant Dino J. Bianco ("Bianco") has been a director of the Company since the Spin-Off and was a director of MTW from 2015 until the Spin-Off.

12. Defendant Joan K. Chow ("Chow") has been a director of the Company since the Spin-Off and was a director of MTW from 2012 until the Spin-Off.

- 4 -

13. Defendant Janice L. Fields ("Fields") has been a director of the Company since April 2018.

14. Defendant Brian R. Gamache ("Gamache") has been a director of the Company since March 2017.

15. Defendant Andrew Langham ("Langham") has been a director of the Company since the Spin-Off.

16. Defendant William C. Johnson ("Johnson") has been President and Chief Executive Officer ("CEO") of the Company since November 2018, and a director since October 2018.

17. Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

18. Welbilt is one of the world's leading commercial foodservice equipment companies currently leveraging a full suite of equipment capable of storing, cooking, holding, displaying, dispensing and serving in both hot and cold foodservice categories. Welbilt designs, manufactures and supplies best-in-class equipment for the global commercial foodservice market which is used by commercial and institutional foodservice operators including full-service restaurants, quick-service restaurant chains, hotels, resorts, cruise ships, caterers,

supermarkets, convenience stores, hospitals, schools and other institutions. Welbilt sells its products in each of its geographical segments, the Americas, EMEA and APAC, through a global network of over 5,000 distributors, dealers, buying groups and manufacturers' representatives.

19. The Company's portfolio of award-winning product brands includes Cleveland, Convotherm, Crem, Delfield, Frymaster, Garland, Kolpak, Lincoln, Manitowoc Ice, Merco, Merrychef and Multiplex. These product brands are supported by three service brands: FitKitchen, Welbilt's fully-integrated kitchen systems business, KitchenConnect, Welbilt's digital cloud-based application offering and KitchenCare, Welbilt's aftermarket parts and service business.

20. On August 3, 2021, the Company announced its second quarter 2021 financial results, reporting: Net sales of $395.6 million, an increase of 92.0% from the prior year; Earnings from operations of $50.2 million compared to $0.7 million in the prior year; Adjusted Operating EBITDA of $73.5 million compared to $19.8 million in the prior year; and Net earnings of $23.7 million compared to a net loss of $17.4 million in the prior year. Commenting on the Company's results, defendant Johnson stated:

> Second quarter Third-party Net Sales and Organic Net Sales grew substantially this quarter compared to last year's second quarter, which marked the worst quarter we experienced since the beginning of the COVID-19 pandemic. We are very pleased with our strong Adjusted Operating EBITDA and Adjusted Operating EBITDA margin performance despite the inflationary impacts from our supply

chain and logistics providers. We successfully offset these headwinds with the beneficial impact from increased volume, positive net pricing, and improved productivity attributable to the improvements we have made to date as part of our Business Transformation Program ("Transformation Program") and through the cost containment actions we put in place last year that are continuing to benefit us. Industry conditions are improving with the rollout of COVID-19 vaccines and the lifting of restrictions in some locations, although improvements are uneven globally. We are building inventory and capacity to respond to our growing order pace and will adjust our costs and investments accordingly. Finally, we are pleased with our second quarter Free Cash Flow generation, which allowed us to both increase cash and reduce total debt in the quarter.

Net sales increased 92.0 percent in the second quarter compared to last year's second quarter. Excluding the impact from foreign currency translation, Organic Net Sales increased 85.8 percent, with strong growth coming from large chain customers, general market dealers and distributors, and KitchenCare® master parts distributors and factory-authorized service dealers. This growth is compared against last year's historically weak second quarter which was highly impacted by the COVID-19 pandemic.

The second quarter Adjusted Operating EBITDA margin of 18.6 percent was 900 basis points higher than last year's second quarter driven by the incremental impact on margins from higher volume, positive net pricing and lower manufacturing costs partially offset by increased selling, general and administrative expenses (net of adjustments for the Transformation Program expenses and other adjustments to SG&A that are included in our Adjusted Operating EBITDA reconciliation ("Net SG&A")) and higher materials costs. Net SG&A costs were higher primarily from higher compensation expense and commissions reflecting both the higher incentives and the non-recurrence of some of the measures taken in the second quarter a year ago in response to the impact from the pandemic. The prior year period included temporary salary reductions, furloughs, reductions in incentive compensation and lower commissions due to the large sales decrease in the quarter.

We continued to make progress on the Transformation Program during the second quarter. We continued to execute on our planned procurement activities related to materials spend and on executing incremental cost savings opportunities through the implementation of Value Analysis Value Engineering ("VAVE") initiatives, although we faced challenges in balancing progress on these activities with the need for resources to address component supply issues. We delivered productivity improvements in our manufacturing plants which provided additional savings in the quarter, even as some plants were impacted by parts shortages that impacted production schedules. We have completed the majority of the planned consulting spend related to the Transformation Program and expect minimal additional spend going forward.

**The Proposed Transaction**

21. On July 14, 2021, Welbilt and Ali issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

CHICAGO and NEW PORT RICHEY, Fla. – July 14, 2021 – Ali Holding S.r.l. ("Ali Group"), one of the largest and most diversified global leaders in the foodservice equipment industry, and Welbilt, Inc. (NYSE:WBT) today announced that they have entered into a definitive merger agreement under which Ali Group will acquire Welbilt in an all-cash transaction for $24.00 per share, or approximately $3.5 billion in aggregate equity value and $4.8 billion in enterprise value. The merger agreement has been unanimously approved by the boards of directors of both companies.

"We are pleased to announce this agreement with Welbilt and look forward to combining our highly complementary brands to create a comprehensive product portfolio and enhance our global footprint," said Filippo Berti, Ali Group Chairman and Chief Executive Officer. "We have long admired Welbilt's heritage, breadth of products, brand strength and management team, and together we will have an expanded range of innovative products. The transaction marks a significant milestone in Ali Group's history and will position us to better serve our customers and capitalize on attractive growth opportunities. We are excited to welcome Welbilt and its employees

to the Ali Group family as we strengthen our global presence and continue to build on our culture of quality and innovation."

"We are excited to reach this agreement with Ali Group, which delivers outstanding value to Welbilt shareholders, provides new opportunities for Welbilt employees and enables Welbilt to benefit from the expertise and resources of Ali Group," said Bill Johnson, Welbilt's President and Chief Executive Officer. "This transaction provides a compelling and certain cash value to Welbilt shareholders at an attractive premium and will create a global leader in the foodservice equipment and solutions industry with a full range of connectable foodservice solutions for our customers. I want to thank each of our employees for their hard work and dedication to the success of Welbilt, which has positioned us to reach this agreement today. On behalf of the Welbilt Board and management team, we are excited to work closely with Filippo and the Ali Group team as we bring our companies together."

In addition, Carl C. Icahn (and affiliates), who owns 7.7% of Welbilt stock, has entered into a support agreement in favor of the transaction.

**Approvals and Timing**

The transaction, which is not conditioned on financing, is expected to close in early 2022, subject to the satisfaction of customary closing conditions, including the approval of Welbilt shareholders. Upon completion of the transaction, Welbilt's shares will no longer trade on The New York Stock Exchange.

Welbilt today also confirmed that it has terminated the previous merger agreement entered into with The Middleby Corporation ("Middleby") on April 20, 2021. Per the terms of the Middleby merger agreement, Ali Group has paid Middleby a $110 million termination fee on Welbilt's behalf as agreed to in the Ali Group merger agreement. In light of the termination of the agreement with Middleby, Welbilt is cancelling its July 21, 2021, special stockholder meeting to approve the Middleby transaction. Welbilt expects to announce a special stockholder meeting to approve the Ali Group transaction at a later date.

**Advisors**

      Goldman Sachs & Co. LLC has acted as Ali Group's exclusive financial advisor with financing provided by Goldman Sachs International and Mediobanca, and Alston & Bird is acting as legal advisor. Morgan Stanley & Co. LLC is serving as exclusive financial advisor to Welbilt, and Gibson, Dunn & Crutcher LLP is serving as legal counsel.

**The Proxy Statement Contains Material Misstatements or Omissions**

      22.    The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Welbilt's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed voting or appraisal decision on the Proposed Transaction.

      23.    Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections; (ii) the data and inputs underlying the valuation analyses performed by the Company's financial advisor, Morgan Stanley; and (iii) the background of the Proposed Transaction.

*Material Omissions Concerning the Company's Financial Projections*

      24.    The Proxy Statement omits material information regarding the Company's financial projections.

      25.    For example, with respect to each set of the Company's projections, the Proxy Statement fails to disclose the line items underlying: (i) Adjusted

EBITDA (burdened by stock-based compensation ("SBC")); and (ii) Unlevered Free Cash Flow.

26.     The omission of this information renders the statements in the "Certain Unaudited Forecasted Financial Information" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Morgan Stanley's Financial Analyses***

27.     The Proxy Statement omits material information regarding the data and inputs underlying the valuation analyses performed by the Company's financial advisor, Morgan Stanley.

28.     The Proxy Statement describes Morgan Stanley's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of Morgan Stanley's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Welbilt's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Morgan Stanley's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

29.     With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the line items used to calculate the Company's unlevered free cash flow; (ii) quantification of the terminal values for

Welbilt; (iii) quantification of the inputs and assumptions underlying the discount rates of 8.6% to 9.8%; and (iv) the number of fully diluted shares of Company stock outstanding as of July 8, 2021.

30. With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Proxy Statement fails to disclose: (i) Welbilt's projected earnings per share used in the analysis; and (ii) quantification of the inputs and assumptions underlying the discount rate of 12.8%.

31. With respect to Morgan Stanley's *Discounted Equity Research Analysts' Future Price Targets* analyses, the Proxy Statement fails to disclose: (i) the price targets used in the analysis; and (ii) the sources thereof.

32. With respect to Morgan Stanley's *Precedent Premia Analysis*, the Proxy Statement fails to disclose: (i) each of the transactions observed by Morgan Stanley in the analysis; and (ii) the premiums for each of the transactions observed.

33. The omission of this information renders the statements in the "Opinion of Financial Advisor to Welbilt" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

34. The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

35. For example, the Proxy Statement fails to disclose whether Welbilt entered into confidentiality agreements with potential counterparties that include "don't-ask, don't-waive" standstill provisions that are presently precluding these potential counterparties from submitting a topping bid for the Company.

36. The disclosure of the terms of these confidentiality agreements is crucial to Welbilt stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

37. The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

38. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other Welbilt stockholders will be unable to make an informed voting or appraisal decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### <u>COUNT I</u>

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

39. Plaintiff repeats all previous allegations as if set forth in full.

40. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

41. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Morgan Stanley and the background of the Proposed Transaction. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

42. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

43. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

44. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

45. Plaintiff repeats all previous allegations as if set forth in full.

46. The Individual Defendants acted as controlling persons of Welbilt within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Welbilt, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

49. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

50. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Welbilt's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Welbilt, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Welbilt stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: _September 9, 2021              **WEISSLAW LLP**

                                        By /s/ Richard A. Acocelli
                                        Richard A. Acocelli
                                        1500 Broadway, 16th Floor
                                        New York, New York 10036
                                        Tel: (212) 682-3025
                                        Fax: (212) 682-3010
                                        Email: racocelli@weisslawllp.com

                                        *Attorneys for Plaintiff*